## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-02611

LITTLE SISTERS OF THE POOR HOME FOR THE
AGED, DENVER, COLORADO, a Colorado non-profit
corporation, LITTLE SISTERS OF THE POOR,
BALTIMORE, INC., a Maryland non-profit corporation,
by themselves and on behalf of all others similarly situated,

CHRISTIAN BROTHERS SERVICES, a New Mexico
non-profit corporation, and

CHRISTIAN BROTHERS EMPLOYEE BENEFIT
TRUST,

      Plaintiffs,

  v.

KATHLEEN SEBELIUS, Secretary of the United States
Department of Health and Human Services,

UNITED STATES DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

THOMAS E. PEREZ, Secretary of the United States
Department of Labor,

UNITED STATES DEPARTMENT OF LABOR,

JACOB J. LEW, Secretary of the United States Department
of the Treasury, and

UNITED STATES DEPARTMENT OF THE
TREASURY,

      Defendants.

## DECLARATION OF MARK RIENZI

      1.     My name is Mark Rienzi.  I am over the age of 21 and am capable of making this

unsworn declaration pursuant to 28 U.S.C. § 1746.  I have not been convicted of a felony or

crime involving dishonesty, and the facts contained herein are either within my personal knowledge or are based on records kept by my law firm which I believe to be true and correct.

2.      I am one of the counsel representing Plaintiffs in the above-captioned matter and am admitted *pro hac vice* before this Court in connection with this case. I have personal knowledge of everything testified to in this declaration.

3.      To date, there has been no discovery in this case, and there is currently no schedule for discovery.

4.      The Defendants have moved for dismissal or summary judgment on all claims, many of which depend at least in part on facts that have not been fully developed in this case and which are discoverable.

5.      Plaintiffs' Free Exercise Clause, Establishment Clause, Free Speech Clause, Equal Protection Clause, Due Process Clause, and Administrative Procedure Act claims all require factual development before the Court can consider granting summary judgment for Defendants on those claims.  To be clear, it is entirely possible that Plaintiffs can *win* on these claims without discovery, and Plaintiffs are not required to prove intentional discrimination.  But for Defendants to win the case at this early juncture, they would need to demonstrate that Plaintiffs cannot succeed on any legal theory, including intentional discrimination.

6.      For example, discovery would likely yield admissible evidence that Defendants intentionally discriminated among religious organizations and failed to draft narrowly tailored regulations in violation of the Free Exercise, Establishment, Free Speech, Equal Protection, and Due Process Clauses and the Administrative Procedure Act.

7.      Defendants have made statements suggesting hostility towards religious organizations. For example, it has been reported that on October 5, 2011, six days after the

comment period for the original Interim Final Rules ended, Defendant Sebelius gave a speech at a fundraiser for NARAL Pro-Choice America.  She told the assembled crowd, "We are in a war."  *See* William McGurn, Op-Ed., *The Church of Kathleen Sebelius*, Wall St. J., Dec. 13, 2011,  available  at  http://online.wsj.com/article/SB10001424052970203518404577094631979925326.html (last visited Sept. 23, 2013).

8.      Similarly, it has been reported that Secretary Sebelius announced the content of the Final Rule the same day that the comment period closed, without taking the time to review—let alone consider—the many substantive objections to the Final Rule. *See* Kathleen Sebelius, Remarks at The Forum at Harvard School of Public Health (Apr. 8, 2013), video clip *available at*  http://theforum.sph.harvard.edu/events/conversation-kathleen-sebelius  (starting  at  51:20-52:00) (last visited Nov. 21, 2013).

9.      Given these reports, depositions of Defendants, interrogatories, and production of internal documents would be likely to reveal admissible evidence related to discriminatory intent towards religious nonprofit organizations in excluding them from the religious employers' exemption.

10.      Discovery would also likely yield admissible evidence that Defendants failed to satisfy strict scrutiny and did not use (or even consider) the least restrictive means to accomplish the alleged governmental purpose.  The government bears the burden of proving that it can satisfy this test, and of demonstrating that it engaged in good faith consideration of less restrictive alternatives.  *See, e.g., Grutter v. Bollinger*, 539 U.S. 306, 339 (2003) (narrow tailoring "require[s] serious, good faith consideration" of workable alternatives); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *id.* at 820

(faulting government because it "made no attempt to confirm the accuracy of its estimate through surveys or other field tests").

11.     Discovery would be likely to yield admissible evidence proving that the rulemaking process intentionally excluded certain nonprofit religious organizations from the scope of the religious employers' exemption in violation of the Free Exercise, Establishment, Free Speech, Equal Protection, and Due Process Clauses and the Administrative Procedure Act.

12.     Depositions, document production, and interrogatories explaining Defendants' internal processes would be likely to give rise to evidence that religious organizations were intentionally excluded from the rulemaking process and the accommodation.

13.     Discovery would be likely to yield admissible evidence that Defendants acted discriminatorily, without good cause, and with improper delegation in selecting and coordinating with the Institute of Medicine ("IOM") in the rulemaking process of the Mandate in violation of the Free Exercise, Establishment, Free Speech, Equal Protection, and Due Process Clauses and the Administrative Procedure Act.

14.     Information regarding how and why the IOM committee was chosen, and information about the IOM committee selection process, would likely lead to the discovery of admissible evidence showing improper discrimination against religious organizations, and improper delegation.

15.     Further, discovery would be likely to produce admissible evidence that the IOM report was based on faulty or incomplete evidence and procedures, and thus that Defendants' reliance on it violated the Administrative Procedure Act.

16.     Discovery would also likely yield evidence concerning the central conundrum presented by Defendants' Motion:  if the current system does not work, why is the government

forcing the Little Sisters and other Plaintiffs to participate in that system?   To date, the government has offered no plausible reason for its insistence (backed  up by the threat of large fines) that Plaintiffs complete acts that Plaintiffs say violate their religion, and Defendants say are meaningless.

17.    This Court should not grant summary judgment in Defendants' favor without discovery on these questions.

18.    Attached hereto as Exhibit A is a true and correct copy of Document 53-1, filed in *Persico, et al.,  v. Sebelius, et al.*, Case No. 1:13-CV-00303 (W.D. Pa.).

19.    Attached hereto as Exhibit B is a true and correct copy of the Church Alliance's April 8, 2013 comment letter, printed from http://church-alliance.org/initiatives/comment-letters (last visited November 22, 2013).

20.    Attached hereto as Exhibit C is a true and correct copy of Document 77-2, filed in *Roman Catholic Archdiocese of New York, et al., v. Sebelius, et al.*, Case No. 1:12-CV-2542-BMC (E.D.N.Y.).

21.    Attached hereto as Exhibit D is a true and correct copy of Document 49-1, filed in *Reaching Souls Int'l, Inc., et al. v. Sebelius, et al.*, 5:13-cv-01092-D (W.D. Okla.).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 22, 2013.

*s/ Mark Rienzi*
MARK RIENZI