IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 1:13-cv-02611-WJM-BNB

LITTLE SISTERS OF THE POOR HOME FOR THE AGED, DENVER, COLORADO, a Colorado non-profit corporation,
LITTLE SISTERS OF THE POOR, BALTIMORE, INC., a Maryland non-profit corporation, by themselves and on behalf of all others similarly situated, along with
CHRISTIAN BROTHERS SERVICES, a New Mexico non-profit corporation, and
CHRISTIAN BROTHERS EMPLOYEE BENEFIT TRUST,

     Plaintiffs,

v.

KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services,
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
THOMAS E. PEREZ, Secretary of the United States of Department of Labor,
UNITED STATES DEPARTMENT OF LABOR,
JACOB J. LEW, Secretary of the United States Department of the Treasury, and
UNITED STATES DEPARTMENT OF THE TREASURY,

     Defendants.

## UNOPPOSED MOTION TO REOPEN PROCEEDINGS AND FOR ENTRY OF PERMANENT INJUNCTION AND DECLARATION, WITH MEMORANDUM IN SUPPORT

Pursuant to D.C.COLO.LCivR.7.1 and 41.2 and Fed. R. Civ. P. 65, Plaintiffs respectfully request that the Court reopen the proceedings in this case and grant a permanent injunction and declaration. On Monday, the Tenth Circuit formally abated the Plaintiffs' pending appeal so that Plaintiffs could move to reopen proceedings before this Court and seek a final disposition. ECF No. 79. Defendants do not oppose the motion to reopen and have stated that they do not expect to take a position on the permanent injunction and declaration.

1

This case involves a challenge to a federal regulation ("the mandate") that would have required Plaintiffs to pay millions of dollars in annual penalties. Following concessions to the Supreme Court and regulatory changes, Defendants ("the government") have now abandoned the positions that they previously took before this Court and have admitted that their mandate violates the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ("RFRA"). Accordingly, several federal district courts, including three in the Tenth Circuit, have recently resolved parallel mandate litigation by entering permanent injunctions. Thus, Plaintiffs respectfully request that this Court grant similar relief on their RFRA claim so that Plaintiffs can dismiss their remaining claims and end this litigation. A proposed permanent injunction and declaration is being filed concurrently with this motion.

**BACKGROUND**

**A. The Affordable Care Act and the mandate**

The Affordable Care Act requires that any "group health plan" must provide for certain "preventive care." 42 U.S.C. § 300gg-13(a). The Department of Health and Human Services ("HHS") defined preventative care to include all FDA-approved contraceptive methods for women. 77 Fed. Reg. 8725 (Feb. 15, 2012). HHS exempted many health plans from this mandate, including plans for institutional churches. 78 Fed. Reg. 39,870, 39,874 (July 2, 2013); 45 C.F.R. § 147.131(a). But for religious organizations such as the Plaintiffs, the government created an "accommodation," which required Plaintiffs to allow their third-party administrators ("TPA") to provide contraceptives to Plaintiffs' employees through Plaintiffs' health plans. 77 Fed. Reg. 16,501, 16,503 (March 21, 2012). Plaintiffs sincerely believed that they could not accept the accommodation. They also could not pay the penalties for failing to comply with the mandate. *See,*

*e.g.*, 26 U.S.C. § 4980D(b)(1) ($100/day per person for non-exempt employer that provides a health plan that does not include contraceptive coverage); 26 U.S.C. § 4980H(c)(1) ($2000/year per employee for large employers that do not provide a health plan). Plaintiffs filed suit.

**B. Plaintiffs' lawsuit**

Plaintiffs Little Sisters of the Poor are not-for-profit Catholic ministries who provide health benefits through Plaintiff Christian Brothers Employee Benefit Trust, as administered by Plaintiff Christian Brothers Services, to ensure that their health benefits are provided in a manner consistent with their religious beliefs. ECF No. 15-1 ¶¶ 20-21; ECF No. 15-2 ¶¶ 14-17. The Trust is a self-insured church plan that was formed by the Roman Catholic Church to provide benefits for workers of organizations that are operated under the auspices of the Church. ECF No. 15-2 ¶¶ 5-8; *see also* 29 U.S.C. § 1002(33) (defining "church plan"). The Trust serves more than 450 such Catholic organizations, which are represented as a putative class by the Little Sisters Plaintiffs. ECF No. 15-2 ¶¶ 39-40. All member organizations are religious ministries that use the same health plan and have religious objections to the mandate and accommodation. *Id.* ¶¶ 37-39; *see also* ECF No. 37-1 ¶ 9; ECF No. 37-2 ¶ 8. Because these ministries could not comply with the mandate or the accommodation, they faced massive financial penalties. ECF No. 15-2 ¶¶ 44, 53 (estimating class member penalties of $402,741,00 per year and Trust losses of $100,000,000 in plan contributions).

Plaintiffs filed suit on September 24, 2013 and raised sixteen claims. ECF No. 1. Beyond their RFRA claim (Count I), Plaintiffs have brought claims under the Establishment and Free Exercise Clauses (Counts II-VI, XI, and XV), the Free Speech Clause (Counts IX-XI), the First and Fifth Amendments (Counts VII-VIII), and the Administrative Procedure Act (Counts XII-XVI).

### C. Plaintiffs' preliminary injunction motion

On October 24, 2013, Plaintiffs sought a preliminary injunction from this Court protecting all Trust plan members, arguing that the mandate violated RFRA because it placed a substantial burden on Plaintiffs' sincere exercise of religion and that the government could not show that the burden survived strict scrutiny. *See* ECF No. 15 (preliminary injunction motion, citing *Hobby Lobby v. Sebelius*, 723 F.3d 1114, 1125-26 (10th Cir. 2013) (en banc)). The government opposed the motion, but did "not object to the scope of the resulting preliminary injunction including the named plaintiffs as well as any members of the class plaintiffs have proposed in their complaint." ECF No. 29 at 15 n.8. The government did not contest the sincerity of Plaintiffs' religious beliefs and admitted its strict scrutiny defense was foreclosed by Tenth Circuit precedent. *Id.* at 8-10. Instead, the government argued that Plaintiffs' beliefs were not substantially burdened by the mandate's accommodation scheme because of representations it made to this Court that the operation of the accommodation would not result in provision of contraceptives in connection with Plaintiffs' health plan. *Id.* at 8-10. Based on the government's representations, the Court denied the motion on December 27, 2013. ECF No. 52.

### D. The Plaintiffs' request for an emergency injunction pending appeal

Because the financial penalties for failing to comply with the mandate started on January 1, 2014, Plaintiffs filed an emergency appeal to the Tenth Circuit and moved both this Court and the Tenth Circuit for an injunction pending appeal. The Tenth Circuit denied the motion on December 31, 2013. Plaintiffs then filed an emergency injunction application with Justice Sotomayor in her role as Circuit Justice for the Tenth Circuit. Justice Sotomayor entered an order temporarily

enjoining the government from enforcing the mandate against the Plaintiffs. On January 24, 2014, the Supreme Court ruled that:

> If the employer applicants inform the Secretary of Health and Human Services in writing that they are non-profit organizations that hold themselves out as religious and have religious objections to providing coverage for contraceptive services, the respondents are enjoined from enforcing against the applicants the challenged provisions of the Patient Protection and Affordable Care Act and related regulations pending final disposition of the appeal by the United States Court of Appeals for the Tenth Circuit. To meet the condition for injunction pending appeal, [Plaintiffs] need not use the form prescribed by the Government and need not send copies to third-party administrators. The Court issues this order based on all of the circumstances of the case, and this order should not be construed as an expression of the Court's views on the merits.

*Little Sisters of the Poor Home for the Aged v. Sebelius*, 134 S. Ct. 1022 (2014). Plaintiffs provided the required notice to the Secretary and currently remain protected by the Supreme Court's injunction pending the outcome of this case.

Because "the Supreme Court ha[d] effectively granted Plaintiffs the injunctive relief they s[ought]," this Court denied as moot the Plaintiffs' outstanding motion for an injunction pending appeal. ECF No. 68. The Court also administratively closed the case pending appeal. ECF No. 69.[1]

### E. The main appeal

In the main appeal, the government began to abandon positions that it had taken before this Court. For instance, it stated that Express Scripts, Inc., was also a TPA of the Plaintiffs and that the government would offer to pay Express Scripts to provide contraceptives to Plaintiffs' employees if Plaintiffs executed the accommodation. Oral Argument at 38:22 to 38:35, *Little Sisters of the Poor v. Burwell*, 794 F.3d 1151 (10th Cir. 2015) (No. 13-1540),

---

[1] The Tenth Circuit has now formally placed the pending appeal in abeyance to allow the parties to pursue final resolution in this Court.

https://www.ca10.uscourts.gov/sites/default/files/clerk/13-1540.mp3. Further, the government stated that Express Scripts "in fact, has been taking [the government] up on th[at] offer" for other parties. Oral Argument at 12:16 to 12:39, *Little Sisters of the Poor v. Burwell*, 794 F.3d 1151 (10th Cir. 2015) (No. 14-6026), https://www.ca10.uscourts.gov/sites/default/files/clerk/14-6028.mp3. Yet the government continued to press the position that Plaintiffs' substantial burden arguments were "fundamentally mistaken" because the government did not view the Plaintiffs' required actions under the accommodation as triggering coverage of objectionable services in association with Plaintiffs' health plans. Gov't Suppl. Br. at 2-3, *Little Sisters of the Poor v. Burwell*, 794 F.3d 1151 (10th Cir. 2015) (Nos. 13-1540, 14-6026, 14-6028). A divided panel of the Tenth Circuit accepted the government's argument. *Little Sisters of the Poor v. Burwell*, 794 F.3d 1151, 1169 (10th Cir. 2015), *vacated and remanded sub nom. Zubik v. Burwell*, 136 S. Ct. 1557 (2016).

But on the same day that the Tenth Circuit ruled, the government issued new regulations that once again took a different position on the operation of the accommodation. In the new regulations, the government explained that its accommodation would effectuate contraceptive coverage from inside the Plaintiffs' own "insurance coverage network," to take advantage of their "coverage administration infrastructure." 80 Fed. Reg. 41,318 (July 14, 2015). Two months later, the Tenth Circuit *sua sponte* took a poll to consider en banc rehearing, which was denied over the dissent of five judges who believed that the mandate and accommodation created a substantial burden. *Little Sisters of the Poor v. Burwell*, 799 F.3d 1315, 1317-18 (10th Cir. 2015) (Hartz, J., dissenting from denial of rehearing en banc; joined by Kelly, Tymkovich, Gorsuch, and Holmes, JJ.).

### F. The Supreme Court litigation

At the Supreme Court, the government continued to evolve its position from the argument it

had pressed before this Court and the Tenth Circuit. The government instead admitted that the accommodation required contraceptive coverage to be "part of the same plan as the coverage provided by the employer," Br. for the Resp'ts at 38, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418) (quotations omitted); *see also* Tr. of Oral Arg. at 60-61, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418) (Chief Justice Roberts: "You want the coverage for contraceptive services to be provided, I think as you as it said, seamlessly. You want it to be in the one insurance package. . . . Is that a fair understanding of the case?"; Solicitor General Verrilli: "I think it is one fair understanding of the case."). At oral argument, the government said that it "would be content" if Court would "assume a substantial burden" and rule only on the government's strict scrutiny affirmative defense. Tr. of Oral Arg. at 61, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418).

The government also made admissions to the Supreme Court that further undermined the strict scrutiny defense that it had already conceded to this Court. The government admitted that it does not matter where the contraceptive coverage comes from and that women who do not receive the coverage from their employer can "ordinarily" get it from "a family member's employer," "an Exchange," or "another government program." Gov't Br. at 65, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418). And the government admitted that the mandate "could be modified" to avoid forcing religious groups to carry the coverage, Gov't Suppl. Br. at 14-15, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418), undermining its least restrictive means defense.

As a result of these concessions, the Supreme Court unanimously vacated the Tenth Circuit panel decision, along with decisions of the other Courts of Appeals. *Zubik*, 136 S. Ct. at 1560-61. It held that "the Government may not impose taxes or penalties on petitioners for failure to provide the relevant notice" and remanded the cases to the Courts of Appeals so that the parties could be

"afforded an opportunity to arrive at an approach going forward" that both "accommodates [the religious employers'] religious exercise" and ensures that "women covered by [their] health plans 'receive full and equal health coverage, including contraceptive coverage.'" *Id.*

### G. The Interim Final Rules

Per the Supreme Court's instruction, the parties returned to the lower courts and conferred about possible resolutions. In May 2017, the President issued an Executive Order instructing the government to "consider issuing amended regulations . . . to address conscience-based objections" to the challenged mandate. Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017).

Five months later, the government issued Interim Final Rules (IFR) revising its accommodation. 82 Fed. Reg. 47,792 (Oct. 13, 2017). Citing its prior concessions to the Supreme Court, the government concluded that requiring objecting religious organizations to comply with the mandate "constituted a substantial burden on the religious exercise" of objecting religious organizations. *Id.* at 47,806, 47,809. Since requiring "compliance through the mandate or accommodation . . . did not serve a compelling interest and was not the least restrictive means of serving a compelling interest," the government concluded that "requiring such compliance led to the violation of RFRA in many instances." *Id.* at 47,806. In order to genuinely accommodate religious organizations' objections, the government expanded the "religious employer" exemption to the mandate to include "all bona fide religious objectors." *Id.*

At least eight lawsuits have since been filed challenging the IFR, arguing that it is unconstitutional and seeking injunctions prohibiting the government from enforcing its expanded religious exemption. On December 15, 2017, the Eastern District of Pennsylvania issued a preliminary injunction against the expanded religious exemption on the grounds that the

8

government likely issued the IFR without following the procedures required by the Administrative Procedure Act (APA). *Pennsylvania v. Trump*, No. 2:17-cv-4540, 2017 WL 6398465 (E.D. Pa. Dec. 15, 2017). The Northern District of California issued a second nationwide injunction, also on APA grounds. *California v. HHS*, No. 4:17-cv-5783, 2017 WL 6524627 (N.D. Cal. Dec. 21, 2017).

Both courts suggested that their APA rulings should not impact existing litigation, leaving this Court free to rule in Plaintiffs' specific case. *Pennsylvania*, 2017 WL 6398465, at *21; *California*, 2017 WL 6524627, at *17; *see also* Opinion Denying Motion to Intervene, *Pennsylvania v. Trump*, No. 2:17-cv-4540, 2017 WL 6206133 (E.D. Pa. Dec. 8, 2017) (denying Little Sisters' intervention in challenge to IFR in part because intervenor "has the option of seeking recourse through its own lawsuit, . . . which, while currently stayed, remains open"). At least five other district courts have entered permanent injunctions in favor of religious objectors to the mandate since the Pennsylvania and California rulings. *See* Section II n.2, *infra* (listing cases).

## ARGUMENT

To re-open the proceedings, Plaintiffs must show "good cause." D.C.COLO.LCivR. 41.2.

To obtain a permanent injunction, Plaintiffs must prove: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014). This is "remarkably similar" to the preliminary injunction standard; the "only measurable difference" is that Plaintiffs must show "actual success on the merits" instead of a "substantial likelihood of success." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007).

9

Declaratory relief "does not share injunctive relief's requirement of irreparable harm" and may be issued in order to "clarify the relations between the parties and eliminate the legal uncertainties that gave rise to . . . litigation." *Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir. 1992); *see also* 13C Wright, Miller & Cooper, *Federal Prac. & Proc. Juris.* § 3533.5 (3d ed.).

Here, Plaintiffs have shown good cause to re-open the proceedings and are entitled to a permanent injunction and a declaration because they have succeeded on the merits of their RFRA claim given the government's changed positions, concessions before the Supreme Court, and the legal conclusions announced in the government's recent IFR.

### I. There is good cause to reopen this proceeding.

At Plaintiffs' request, the Tenth Circuit formally abated the pending appeal while this Court adjudicates this motion, and has ordered the Plaintiffs to file a status report by June 13 "advising [the Tenth Circuit] as to the status of the proceedings in the district court" and to notify the court "within 5 days of a final disposition by the district court." ECF No. 79 at 2; *see also Pueblo of Pojoaque v. New Mexico*, 863 F.3d 1226, 1231 (10th Cir. 2017) (district court may adjudicate merits while interlocutory appeal of preliminary injunction is pending). Given the Tenth Circuit's order, there is good cause to reopen this proceeding so that the parties can fully resolve this dispute.

### II. Plaintiffs meet the standard for obtaining a permanent injunction and declaratory relief.

*Actual Success on the Merits*. The only legal issue before the Court concerning Plaintiffs' RFRA claim is substantial burden. Given the government's changed positions, its concessions to the Supreme Court, and its amended regulations, the government now agrees "that requiring . . . compliance through the mandate or accommodation . . . constitute[s] a substantial burden on the

religious exercise" of objectors such as the Plaintiffs. 82 Fed. Reg. at 47,806. Thus, the government has conceded the substantial burden argument.

Further, even if the government had not already conceded that its strict scrutiny affirmative defense is foreclosed by the Tenth Circuit's *Hobby Lobby* decision, that now-abandoned defense would still fail on the merits. The government admitted to the Supreme Court that its interests would be satisfied if a woman can obtain coverage from "a family member's employer," "an Exchange," or "another government program." Br. for the Resp'ts at 65, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418). Thus, there can be no compelling government interest in forcing the Plaintiffs to provide the objectionable coverage. The government also acknowledged that the mandate "could be modified" to avoid forcing religious organizations to carry the coverage themselves, Suppl. Br. for the Resp'ts at 14-15, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418), thereby undermining its "least restrictive means" argument. Those concessions were reiterated in the IFR, which admitted that the mandate "did not serve a compelling interest and was not the least restrictive means of serving a compelling interest." 82 Fed. Reg. at 47,806.

Accordingly, Plaintiffs have shown, and the government agrees, that the government's requirements "led to the violation of RFRA," *id.*, thereby showing actual success on the merits of their RFRA claim.

*Remaining Injunction Factors.* In the Tenth Circuit, showing a RFRA violation establishes irreparable harm. *Hobby Lobby*, 723 F.3d at 1146. And the balance of harms favors Plaintiffs, because both the passage of time since Supreme Court's injunction pending appeal and the IFR itself show that the government will not be harmed at all by granting a permanent injunction to the Plaintiffs. Finally, upholding RFRA rights "is always in the public interest." *Id.* at 1147; *accord O*

*Centro v. Ashcroft*, 389 F.3d 973, 1010 (10th Cir. 2004) (en banc), *aff'd, Gonzales v. O Centro*, 546 U.S. 418 (2006) ("there is a strong public interest in the free exercise of religion"). Plaintiffs have therefore satisfied all of the factors for a permanent injunction and declaratory relief.

**III. Reopening the proceedings and entering a permanent injunction and a declaration is the appropriate way to resolve this litigation.**

Given the two injunctions in place against the IFR, the mandate remains fully applicable to Plaintiffs and requires that Plaintiffs choose between violating their sincerely-held religious beliefs and massive fines. *See*, *e.g.*, 79 Fed. Reg. 51,092 (Aug. 27, 2014). Now that the government has admitted that this scenario violates RFRA, reopening the proceedings and entering a permanent injunction and a declaration are the appropriate way to dispose of this litigation.

Courts in parallel mandate litigation have resolved their cases by issuing injunctions. Five federal district courts have entered such injunctions to permanently protect nonprofit religious objectors from the mandate.[2] Similarly, following the Supreme Court's order in *Zubik* and the IFR, the government dismissed six of its appeals and left district courts' permanent injunctions in place.[3]

---

[2] *See Southern Nazarene Univ. v. Azar*, No. 13-cv-1015 (W.D. Okla. May 15, 2018); *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 12-CV-92, 2018 WL 1520031 (E.D. Mo. Mar. 28, 2018); *Reaching Souls Int'l, Inc. v. Azar*, No. CIV-13-1092, 2018 WL 1352186 (W.D. Okla. Mar. 15, 2018); *Catholic Benefits Ass'n LCA v. Hargan*, No. 14-cv-685 (W.D. Okla. Mar. 7, 2018); *Wheaton College v. Burwell*, No. 13-cv-8910 (N.D. Ill. Feb. 22, 2018).

[3] *See, e.g.*, *Roman Catholic Archdiocese of Atlanta v. Sebelius*, No. 1:12-cv-03489, 2014 WL 1256373, at *33-34 (N.D. Ga. Mar. 26, 2014) (issuing permanent injunction), *appeal dismissed sub nom. Roman Catholic Archdiocese of Atlanta v. Sec'y of U.S. Dep't of HHS,* No. 14-12890-CC (11th Cir. Nov. 7, 2017) (leaving injunction in place); *Roman Catholic Archbishop of Wash. v. Sebelius*, 19 F. Supp. 3d 48, 111 (D.D.C. 2013) (issuing permanent injunction for Thomas Aquinas College), *appeal dismissed sub nom. Priests for Life v. HHS,* Nos. 13-5368, 13,5371, 14-5021 (D.C. Cir. Nov. 6, 2017) (leaving injunction in place); *Perisco v. Sebelius,* No. 1:13-cv-00303 (W.D. Pa. Dec. 20, 2013) (issuing permanent injunction), *appeal dismissed sub nom. Perisco v. Sec'y of U.S. Dep't of HHS,* Nos. 14-1376, 14-1377 (3d Cir. Oct. 20, 2017) (leaving injunction in

Further, after the Supreme Court ruled that it was illegal for the government to enforce its mandate against closely held corporations, *see Burwell v. Hobby Lobby*, 134 S. Ct. 2751, 2784 (2014), for-profit corporations challenging the mandate obtained permanent injunctions from the lower courts. For example, after prevailing on appeal, Hercules Industries returned to the District of Colorado, which converted its preliminary injunction into a permanent injunction to protect Hercules from the mandate. *Newland v. Burwell*, 83 F. Supp. 3d 1122, 1125 (D. Colo. 2015).[4]

## CONCLUSION

Plaintiffs respectfully request that this Court reopen the proceedings and enter the proposed order granting a permanent injunction and issuing a declaration.

Respectfully submitted,

/s/ Mark Rienzi
Mark L. Rienzi
Daniel Blomberg
The Becket Fund for Religious Liberty
1200 New Hampshire Ave N.W., Suite 700
Washington, DC 20036
(202) 349-7208
mrienzi@becketfund.org

---

place); *Brandt v. Burwell*, 43 F. Supp. 3d 462, 495 (W.D. Pa. 2014) (issuing permanent injunction), *appeal dismissed sub nom. Brandt v. Sec'y of U.S. Dep't of HHS* (3d Cir. Oct. 19, 2017) (Nos. 14-3663, 14-4087) (leaving injunction in place); *Catholic Diocese of Beaumont v. Sebelius*, 10 F. Supp. 3d 725, 736–37 (E.D. Tex. 2014) (issuing permanent injunction), *appeal dismissed sub nom. Catholic Diocese of Beaumont v. Hargan,* No. 14-40212 (5th Cir. Oct. 19, 2017) (leaving injunction in place); *Roman Catholic Archdiocese of N.Y. v. Sebelius*, 987 F. Supp. 2d 232, 259 (E.D.N.Y. 2013) (entering permanent injunction), *appeal dismissed sub nom. Catholic Health Care Sys. v. Hargan,* No. 14-427 (2d Cir. Oct. 17, 2017) (leaving injunction in place).

[4] *See also Grote Industries, LLC v. Burwell*, No. 4:12-cv-00134 (S.D. Ind. Apr. 30, 2015) (granting permanent injunction to for-profit objector); *Tonn & Blank Constr., LLC v. Burwell*, No. 1:12-cv-00325 (N.D. Ind. Nov. 6, 2014) (same); *Hartenbower v. HHS*, No. 1:13-cv-02253 (N.D. Ill. Nov. 3, 2014) (same); *Lindsay v. Burwell*, No. 1:13-cv-01210 (N.D. Ill. Dec. 3, 2014) (same).

Carl C. Scherz
Seth Roberts
Locke Lord LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8583
cscherz@lockelord.com

Kevin C. Walsh
Univ. of Richmond Law School
28 Westhampton Way
Richmond, VA
(804) 287-6018
kwalsh@richmond.edu

## CERTIFICATE OF SERVICE

I hereby certify on May 16, 2018, the foregoing motion was served on all counsel of record via the Court's electronic case filing (ECF) system.

/s/ *Mark Rienzi*
Mark Rienzi